IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:19-cr-237 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| JEFFREY SCOTT DWOREK, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

## I. Introduction

The Defendant, Jeffrey Scott Dworek, used Metro Waste Authority (MWA) as his personal bank, "withdrawing" funds as he pleased for his own use. He betrayed the trust placed in him and used MWA's money to support a lifestyle he would not otherwise be able to afford.

## II. The Offense

As discussed at length in the PSR, during Defendant's employment at MWA, he systematically stole money from the agency. Jeff Dworek started working at MWA in 1996 and eventually became Director of Operations, essentially second in command. He was responsible for reviewing and approving vendor invoices to be paid by MWA. Dworek was a trusted employee who was given the responsibility to make sure MWA was properly billed and vendors were paid.

Instead of respecting and honoring the trust placed in him, Jeff Dworek abused that trust and set up an elaborate scheme to defraud MWA over the course of nearly five years. Dworek created a front company, Britad – incorporated by Dworek in South Dakota – and proceeded to fraudulently bill MWA for services Britad never

1

provided. In addition to setting up one front company, Dworek was also aware that *two* other MWA "vendors", Lamar Programming Company and International Telemetry Technologies, also submitted false invoices to MWA and Dworek approved those invoices, knowing they were not legitimate. In addition to approving the fake invoices, Dworek also received payment from these companies, presumably as a kickback for Dworek's role in the scheme. It appears Dworek spent the stolen money on living expenses and credit card expenditures for travel and shopping. In total, Dworek received over $1.5 million dollars from fraudulent invoices to MWA and kickbacks from Lamar Programming Company and International Telemetry Technologies.

### III. The PSR

The government's Sentencing Guideline calculation is as follows.

As set forth in the final PSR, the **base offense level is 7** for the offense of conviction pursuant to U.S.S.G. § 2B1.1(a)(1). The offense level is **increased by 16 levels** pursuant to § 2B1.1(b)(1)(I) because the amount of loss attributable to the crime of conviction and any relevant conduct is more than $1,500,000 but less than $3,500,000. Sophisticated means were used to commit the offense, causing an **increase of 2 levels** pursuant to § 2B1.1(b)(10)(C). The offense level is also **increased by 2 levels** pursuant to § 3B1.3 because the Defendant abused a position of public trust. With **three levels of acceptance of responsibility** deducted, the Defendant's advisory guideline calculation is **57 - 71 months' imprisonment**.

**Loss Amount/Restitution**

The parties agree the amount of loss to MWA is $1,537,230. The parties also agree, in light of *Lagos v. United States*, 138 S. Ct. 1684 (2018), the proper amount of restitution owed to MWA is $1,628,913.

The restitution amount Defendant owes the victim is very high, but this does not support a lower sentence of imprisonment for Defendant. Placing too much weight on a Defendant's ability to make restitution immediately works to "differentiate criminal defendants on the basis of their economic resources, which is clearly contrary to the intent of the sentencing guidelines." *United States v. O'Malley*, 364 F.3d 974, 981 (8th Cir. 2004).

IV. <u>The Appropriate Sentence in Light of 18 U.S.C. § 3553(a)</u>

A. **Harm to MWA**

MWA is an independent governmental agency that oversees the collection and disposal of solid waste for the Des Moines metropolitan area. The company maintains garbage trucks and operates landfills. Sixteen member communities comprise MWA. MWA is managed by an executive director and governed by a board of directors, consisting of one elected official from each community.

As detailed in MWA's Victim Impact Statement provided to Defendant and the Court, MWA has suffered a loss of credibility as a result of the Defendant's actions. MWA has lost trust with their city and regional partners. "This agency, as well as numerous state officials, have spent numerous hours investigating the serious scope of this crime, and rebuilding rapport, both internally with staff and externally with

city and regional partners. It's our hope that the court uses this as an opportunity to make a statement that crimes of this nature cannot and will not be tolerated, nor it in the future."

The Defendant violated the public's trust and stole from the taxpayers. He should be held accountable for his long-term fraud from MWA.

### B. Nature, Circumstances, and Seriousness of the Offense

Section 3553(a)(1) and (a)(2)(A) require this Court's sentence reflect the nature, circumstances, and seriousness of the offense, the need to promote respect for the law, and the need to provide just punishment.

The amount of money involved in this scheme is substantial. The Defendant stole over $1.5 million dollars from a governmental agency during the course of his employment. The Defendant was sneaky about his theft as well, he created a company that did no work for MWA, involved his wife and daughters in his lies, and billed MWA for significant sums of money for work that simply was not done. In addition to his own fraudulent billing of the company he worked for, he also assisted others to defraud MWA and profited from his continued deception.

### C. Specific Deterrence

The Court must also enter a sentence that "will protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). This is not the Defendant's first brush with the law. Defendant has a prior serious conviction. He was convicted of driving under the influence and was in possession of a firearm. He also committed this instant offense while on probation. While under court supervision, he still

systematically stole money from his employer. His fraudulent course of conduct took place over years and involved hundreds of individual transactions. The ease and willingness in which Defendant covered his tracks over a long period of time is troubling.

### D. General Deterrence

In determining the appropriate sentence, the Court must consider the need for the sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The sentence the Defendant receives will undoubtedly be reported and well known. The sentence the Defendant receives should send a message to other similarly-situated individuals who contemplate committing such a fraud. A guideline sentence would send a strong message: if you abuse the trust placed in you by others, if you lie and mislead to steal money, you will face a long prison sentence.

## V. Conclusion

The Defendant should be sentenced to 60 months in prison, a sentence within the advisory guidelines. The government also requests the Court order restitution to victims as detailed in the joint stipulation.

                                  Respectfully Submitted,

                                  Marc Krickbaum
                                United States Attorney

By:   */s/ Rachel J. Scherle*
       Rachel J. Scherle
       Assistant United States Attorney
       United States Courthouse Annex
       110 East Court Avenue, Suite 286
       Des Moines, Iowa 50309-2053
       Tel: (515) 473-9300
       Fax: (515) 473-9292
       Email: Rachel.scherle@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_\_ U.S. Mail  \_\_\_\_ Fax  \_\_\_\_ Hand Delivery

 X  ECF/Electronic filing  \_\_ Other means (email)

UNITED STATES ATTORNEY

By:  */s/ Katelynn Cook*
     Paralegal Specialist